UNITED STATES, Appellee,

v.

Brian H. WEST, Chief Warrant Officer,
U.S. Army, Appellant.

No. 58,733.

CM 448712.

U.S. Court of Military Appeals.

Oct. 24, 1988.

For Appellant: *Major Marion E. Winter* (argued); *Thomas G. Martin, Esq.* (on brief); *Colonel John T. Edwards.*

For Appellee: *Captain Randy V. Cargill* (argued); *Colonel Norman G. Cooper, Lieutenant Colonel Gary F. Roberson, Major Daniel J. Dell'Orto* (on brief); *Major Byron J. Braun.*

*Opinion of the Court*

COX, Judge:

Appellant was tried by a general court-martial composed of officer members at Fort Carson, Colorado. Contrary to his pleas, he was convicted of seventeen specifications alleging both larceny and forgery, making a false official statement, false swearing, and wrongful impersonation of a commissioned officer, in violation of Articles 121, 123, 107, and 134, Uniform Code of Military Justice, 10 U.S.C. §§ 921, 923, 907, and 934, respectively. He was sentenced to a dishonorable discharge, confinement for 11 years, total forfeitures, a fine of $15,000.00, and to be further confined for 3 additional years if the fine was not paid. The convening authority approved the sentence. The Judge Advocate General remitted so much of the unexecuted portion of the sentence as pertains to payment of the $15,000 fine to the United States and the additional 3–year term of confinement for nonpayment the fine. The Court of Military Review affirmed in a memorandum opinion.

We granted review of the following issues:

## I

WHETHER APPELLANT'S MOTION FOR MISTRIAL, FOUNDED UPON EVIDENCE OF A COURT MEMBER'S INATTENTIVENESS AND SLEEPING, SHOULD HAVE BEEN GRANTED.

## II

WHETHER APPELLANT WAS IMPROPERLY DENIED THE RIGHT TO TESTIFY THAT HE HAD PREVIOUSLY REQUESTED THE GOVERNMENT TO ADMINISTER POLYGRAPH AND SODIUM PENTOTHAL EXAMINATIONS.

## I

The problem of the sleeping court member or juror is not unique. 24 C.J.S. *Criminal Law* § 1449(8). Indeed, over the vigorous dissent of Judge Cook, this Court held that reversal is required where a

court member in sworn testimony averred that while he did not think he was totally asleep, he was "a little lethargic"; "fighting sleep"; "heavily eyelidded ... trying to pay attention to what ... the military judge was saying."

*United States v. Brown,* 3 MJ 368 (CMA 1977).

The rule was predicated upon the court member's "obligation ... to be both attentive and dignified." *United States v. Groce,* 3 MJ 369, 370 (CMA 1977) (footnote omitted). The existing rule also provides that the error is not waived by "defense counsel's failure ... to ... move for mistrial, challenge the inattentive member, or request a reiteration of the instructions." *Id.* at 371.

Although a more modern view might compel us to reject this *per se* approach of reversing the conviction without testing for prejudice, we need not reach that question here. *United States v. Fisher,* 21 MJ 327, 328 (CMA 1986) ("[a] *per se* approach to plain-error review is flawed"), quoting

*United States v. Young,* 470 U.S. 1, 16 n. 14, 105 S.Ct. 1038, 1046–1047 n. 14, 84 L.Ed.2d 1 (1985).

We also need not reach the questions concerning impeachment of jury verdicts raised by the recent Supreme Court decision of *Tanner v. United States,* 483 U.S. 107, 107 S.Ct. 2739, 97 L.Ed.2d 90 (1987), which suggests that the question of the inattentive juror is "internal" and does not give rise to an attack upon the jury verdict. "Courts wisely have treated allegations of a juror's inability to hear or comprehend at trial as an internal matter." *Id.* at 2746 (citations omitted).

■■■ We reaffirm the principle that court members have an obligation to remain attentive, and the military judge has the responsibility to ensure that they do so. Here, the military judge was sensitive to this responsibility, investigated the situation, and found as a matter of fact that the court member "was not asleep" during the trial, was "fighting sleep," but "was not asleep or inattentive," and was "alert." Based upon his findings, he denied appellant's motion for a mistrial.[1]

The question whether the court member was asleep or inattentive is clearly a question of fact. A military judge's findings of fact, supported by competent evidence in the record, will not be disturbed on appeal. *United States v. Burris,* 21 MJ 140 (CMA 1985). This principle warrants rejection of Issue I.

## II

Resolution of the second issue requires a brief discussion of the facts. Prior to trial, on November 27, appellant advised the staff judge advocate that he was willing to take a polygraph examination. As a condition thereto, he asked that the charges be dismissed against him if he passed the test. On December 26, a week prior to trial, appellant requested that he be questioned

---

1. Although not of decisional importance, the issue was raised *sua sponte* by the military judge who invited investigation into the question of the inattentive court member. We commend the judge for his sensitivity to the problem and expedient resolution thereof. Furthermore, we urge counsel to make the military judge aware of potential inattentive court members. *See United States v. Frierson,* 24 MJ 647 (ACMR 1987).

while under the influence of sodium pento-thal and that the convening authority con-sider the result prior to trial. Both re-quests were denied by the convening au-thority at the same time.

At trial, the Government moved *in li-mine* to prevent appellant from testifying about the requests and the actions of the convening authority. Initially, the military judge reserved ruling, but when appellant decided to testify, the judge granted the government motion to suppress this evi-dence, finding that "its probative value is substantially outweighed by the danger of ... confusion of the issues, or misleading the members." Mil.R.Evid. 403.

■ In *United States v. Gipson*, 24 MJ 246 (CMA 1987), we concluded that poly-graph evidence is not *per se* inadmissible. However, that case does not stand for the proposition that polygraph results are *per se* admissible. Rather, polygraph results must be evaluated under the entire spec-trum of evidentiary rules.

Furthermore, we have never held that Article 46, UCMJ, 10 U.S.C. § 846, or any constitutional considerations give an ac-cused the right to compel the Government to provide him a polygraph or any other examination which purports to test for "truthfulness." However, we have recog-nized that an accused may be entitled to the assistance of experts upon a proper showing. *United States v. Garries*, 22 MJ 288 (CMA), *cert. denied*, 479 U.S. 985, 107 S.Ct. 575, 93 L.Ed.2d 578 (1986).

Constitutional due process considerations also enter the trial when an evidentiary rule "infringes impermissibly on the right of a defendant to testify on his or her own behalf." *Rock v. Arkansas*, 483 U.S. 44,

107 S.Ct. 2704, 97 L.Ed.2d 37, 2714–15 (1987) (footnote omitted).

Regardless of these principles, "[t]he right of an accused to present evidence in his defense must still yield to 'established rules of procedure and evidence designed to assure both fairness and reliability in the ascertainment of guilt or innocence.'" *McMorris v. Israel*, 643 F.2d 458, 464 (7th Cir.1981) (citation omitted).

■ Turning to the case before us, the accused wanted to testify that he was will-ing to take a conditional polygraph test, that is, one conditioned upon the charges being dismissed if he passed. There is no obligation on the part of the Government to dismiss charges, regardless whether an ac-cused passes a polygraph. The fact that an accused is willing to take a test under this condition does not "hav[e] any tenden-cy to make the existence of any fact that is of consequence to the determination of the action more or less probable." Mil.R.Evid. 401; *see* Mil.R.Evid. 402. In point of fact, it means nothing.[2] It is reasonable to as-sume that any accused would take a poly-graph when the charges would be dis-missed if he passed, *especially if there are no adverse consequences to a failure*. Similarly, the mere willingness of an ac-cused to take a sodium pentothal test, with-out the possibility of adverse consequences, proves nothing.

We need not decide here if the result would be different where an accused want-ed to testify that he made an unconditional offer to take a polygraph or sodium pento-thal test, agreeing that the results could be used against him if he failed, and the Government refused to accommodate him.

2. Chief Judge Hodgson recently wrote in *United States v. Tyler*, 26 MJ 680, 683 (AFCMR 1988), "we hold that neither the willingness nor the unwillingness of a witness to take a polygraph test is admissible. Such evidence is not proba-tive of the witness's truthfulness. *United States v. Ferris*, 719 F.2d 1405 (9th Cir.1983); *People v. Paul*, 78 Cal.App.3d 32, 144 Cal.Rptr. 431 (1978); *People v. Thornton*, 11 Cal.3d 738, 114 Cal.Rptr. 467, 523 P.2d 267 (1974); *see also United States v. Soundingsides*, 820 F.2d 1232 (10th Cir.1987)."

As a general proposition, and for the reasons stated in *Tyler*, we agree. We only caution that the "road may be a tad bit wider" for an accused who wishes to testify as to his own willingness to take a test. To draw an analogy, what if the accused were willing to have his fingerprints analyzed against prints found at the crime scene and the Government refused to examine them, or what if a rape victim refused to let a doctor examine her? Should we bar that evidence?

Such an assertion may well be probative depending upon the state of the evidence. *See generally Rock v. Arkansas, supra; Chambers v. Mississippi,* 410 U.S. 284, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973); *United States v. Gipson, supra.*

In the instant case, we hold that the military judge properly excluded the evidence, although we base our holding upon the lack of relevance rather than on Mil.R. Evid. 403. Thus, there is no error prejudicial to the substantial rights of appellant.

The decision of the United States Army Court of Military Review is affirmed.

Chief Judge EVERETT and Judge SULLIVAN concur.