**UNITED STATES, Appellee,**

v.

**Staff Sergeant James W. McKINNIE, 414–80–5043, United States Army, Appellant.**

**ACMR 8801151.**

U.S. Army Court of Military Review.

28 Nov. 1989.

For Appellant: Captain Thomas A. Sieg, JAGC, Captain Gregory B. Upton, JAGC (on brief).

For Appellee: Lieutenant Colonel Daniel J. Dell'Orto, JAGC, Major Gary L. Hausken, JAGC, Captain Jonathan F. Potter, JAGC (on brief).

Before DeFORD, FOREMAN, and WERNER, Appellate Military Judges.

## OPINION OF THE COURT

FOREMAN, Judge:

A general court-martial composed of officers and noncommissioned officers convicted the appellant, contrary to his pleas, of two specifications of violating a general regulation by fraternizing with subordinates and two specifications of false swearing, in violation of Articles 92 and 134, of the Uniform Code of Military Justice, 10 U.S.C. §§ 892 and 934 (1982) [hereinafter UCMJ]. His approved sentence provides for a bad-conduct discharge and confinement for 120 days.

The appellant now contends that the military judge erred by (1) excluding exculpatory polygraph evidence and (2) refusing to instruct the court members that the subordinates with whom the appellant was accused of fraternizing were accomplices.

The appellant was an instructor at the Academy of Health Sciences at Fort Sam Houston, Texas. An Academy regulation prohibits fraternization between instructors and students. Both violate the regulation by fraternizing.

Three female students testified against the appellant. Specialist P., Private L. and Private M. all testified that they attended a party with the appellant and other instructors in the appellant's off-post apartment at which liquor was consumed. Specialist P. and Private L. testified that they played strip poker at the party with the appellant and two other instructors. Specialist P. testified that the appellant fondled her while she was showering at his apartment. Staff Sergeant (SSG) G., one of the instructors at the strip poker game, also testified against the appellant. During an investigation of the alleged fraternization, the appellant denied under oath that he had fraternized with students, giving rise to the two specifications of false swearing. The appellant did not testify in his own defense.

Two days prior to the trial, with no notice to the prosecution, the appellant hired a private polygraph operator who questioned him regarding the allegations of fraternization. The polygrapher found no indications of deception when the appellant denied the allegations. At an Article 39(a) UCMJ, 10 U.S.C. § 839(a), session prior to pleas, the trial defense counsel asked the military judge for a ruling on the admissibility of the exculpatory polygraph examination. The military judge permitted the defense to establish their polygraph examiner's professional qualifications and found him highly qualified. After considerable negotiation the defense agreed to submit to a government polygraph examination, provided that the convening authority would dismiss the charges if the government's polygraph examination indicated no deception. The convening authority declined to make such an agreement. Then the defense offered to stipulate to the results and admissibility of the government polygraph examination, and have the appellant testify on the merits if the military judge would admit the defense polygraph examiner's testimony. At this point the trial counsel withdrew the government's offer to conduct a second polygraph examination, citing the multiple delays in the trial which had already occurred and stating that the government did not desire to "go to the trouble of having a polygraph examination." The military judge then ruled that

he would not force the government to conduct a polygraph examination of the appellant and that he would not admit the defense's exculpatory polygraph evidence. The military judge gave four reasons for his ruling. First, "I can't force the accused to take the stand." Secondly, "[T]he government can't be forced to stipulate to anything" and did not want to "waste any more time." Thirdly, the results would at best be inconclusive and not helpful to the fact finder. Finally, the *ex parte* nature of the polygraph examination made the reliability of the defense evidence questionable.

In *United States v. Gipson*, 24 M.J. 246 (C.M.A.1987), the Court of Military Appeals, in a split decision, abolished the *per se* exclusion of polygraph evidence and opened the door for admission of polygraph evidence under conditions to be determined in subsequent cases. In *United States v. Abeyta*, 25 M.J. 97 (C.M.A.1987), the trial judge had excluded exculpatory polygraph evidence, erroneously relying on *Frye v. United States*, 293 F. 1013 (D.C.Cir.1923). Judge Cox, with Chief Judge Everett concurring, found that the trial judge's error was not prejudicial, holding that the evidence was not relevant because the appellant had not testified. In *United States v. West*, 27 M.J. 223 (C.M.A.1988), Judge Cox made it clear that *Gipson* does not make polygraph evidence *per se* admissible; it merely holds that such evidence is not *per se* inadmissible. "Rather, polygraph results must be evaluated under the entire spectrum of evidentiary rules." *United States v. West*, 27 M.J. at 225.

*Gipson*, *Abeyta*, and *West* all turn on the question whether the evidence is relevant under Mil.R.Evid. 401 and 402, whether the evidence is helpful to the factfinder within the meaning of Mil.R.Evid. 702, and whether its probative value outweighs collateral dangers in accordance with Mil.R.Evid. 403. At first glance, *Abeyta* would appear to be dispositive of the case before us because the appellant did not testify at trial.

■ Normally, when an accused does not testify, polygraph evidence showing lack of deception is not relevant because his credibility is not in issue. However, in this case the appellant was also charged with false swearing by denying that he had fraternized. Consequently, polygraph evidence showing lack of deception was relevant because it tended to show either that the statements were not false or that the appellant did not believe they were false. Accordingly, we hold that the exculpatory polygraph evidence was relevant within the meaning of Mil.R.Evid. 401 and 402, notwithstanding the failure of the appellant to testify.

■ The defense polygrapher was highly qualified and used accepted polygraph techniques and reliable equipment. Consequently, his expert opinion regarding appellant's lack of deception in denying that he fraternized meets the requirements of Mil. R.Evid. 702.

In this case, the military judge excluded the evidence after applying the balancing test required by Mil.R.Evid. 403. He was concerned with the lack of reliability in an *ex parte* polygraph examination, the likelihood of misleading or confusing the court members, wasting time and delaying the trial. In *Gipson* both Chief Judge Everett and Judge Cox recognized that an *ex parte* polygraph examination is less reliable than one in which the parties agree beforehand to accept the results, because the fear of being caught lying is reduced. *Gipson*, 24 M.J. at 249, 256. Chief Judge Everett commented on the decreasing reliability of subsequent examinations. *Id.* at 255. One of the few federal courts to accept polygraph evidence requires agreement of the parties prior to the test or, when the evidence is to be used to impeach or corroborate a witness, advance notice of the examination, opportunity to conduct another examination, and an attack on the credibility of the witness. *United States v. Piccinonna*, 885 F.2d 1529 (11th Cir.1989). In both the federal and military courts, the trial judge has broad discretion in deciding whether to accept polygraph evidence. In this case, we are not convinced of the validity of the military judge's concern for wasting time, since the defense expert had already testified in the Article 39(a), UCMJ, session and the government expert was ready, willing

and able to conduct a second examination of the appellant. However, we find the military judge's concern for the reliability of the evidence well taken. Further, his refusal to require the government to administer a second test was reasonable in light of the declining reliability of subsequent tests. Accordingly, we hold that the military judge did not abuse his discretion by rejecting the exculpatory polygraph evidence, notwithstanding the appellant's willingness to undergo a second test by a government polygraph examiner.

■ The appellant also contends that the military judge erred by refusing to instruct the court members that the students with whom the appellant was accused of fraternizing and who testified against him were accomplices. A witness who was culpably involved in the offense with the accused is an accomplice. *United States v. Scoles*, 33 C.M.R. 226, 231–2 (C.M.A.1963). Because both instructors and students who fraternize violate the regulation, the three students who testified against the appellant were accomplices and the court members should have been instructed to regard their testimony with great caution. Manual for Courts–Martial, United States, 1984, Rule for Courts–Martial 918(c) discussion; *United States v. Adams*, 19 M.J. 996 (A.C.M.R.1985); *United States v. Moore*, 8 M.J. 738 (A.F.C.M.R.1980). We hold that the military judge erred by refusing to give the requested instruction.

■ Instructional errors must be tested for prejudice. Article 66, UCMJ. *See United States v. Zickefoose*, 17 M.J. 449 (C.M.A.1984) (erroneous entrapment instruction held to be harmless error); *United States v. Moss*, 10 M.J. 329 (C.M.A.1981) (summary disposition) (erroneous "reasonable doubt" instruction held to be harmless error). In this case, we have reviewed the instructional error "against the backdrop of the evidence" and are satisfied that the appellant was not prejudiced. *See United States v. Gonzalez–Dominicci*, 14 M.J. 426, 427 (C.M.A.1983). The testimony of the three students was by no means self-contradictory, uncertain or improbable; to the contrary, it was clear and convincing as to the offenses of which the appellant was convicted. The military judge correctly instructed the court members that SSG G. was an accomplice. Although he erroneously refused to characterize the three students as accomplices, he gave detailed instructions for assessing their credibility. Among other factors, he instructed the court members to consider the sincerity of each witness, conduct in court, friendships, prejudices, character for truthfulness, relationship with either side, and how the witness might be affected by the verdict. He called specific attention to prior inconsistent statements by SSG G. and Specialist P. We hold that the instructional error was not prejudicial.

■ In evaluating the sufficiency of the evidence, we are mindful of the axiom that the testimony of an accomplice may not be corroborated by another accomplice. *United States v. Williamson*, 2 M.J. 597 (N.M. C.M.R.1976); *United States v. McCue*, 3 M.J. 509, 513 n. 2 (A.F.C.M.R.1977). Since we find that the testimony of the four prosecution witnesses was not self-contradictory, uncertain or improbable, we are not confronted with a lack of corroboration.

The court has carefully examined and considered those allegations of error personally raised by the appellant pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A.1982), and insofar as they are not included in the opinion set forth above, are deemed to be without merit.

The findings of guilty and the sentence are affirmed.

Senior Judge DeFORD and Judge WERNER concur.