UNITED STATES, Appellee,

v.

Otha L. NORMENT, Staff Sergeant
U.S. Army, Appellant.

No. 66,891.
CM 9001079.

U.S. Court of Military Appeals.

Argued March 3, 1992.

Decided May 11, 1992.

For Appellant: Captain *Michael Huber* (argued); Lieutenant Colonel *James H. Weise* and Captain *Alan M. Boyd* (on brief); Major *Michael J. Kelleher.*

For Appellee: Major *Kenneth T. Grant* (argued); Colonel *Dayton M. Cramer* and Lieutenant Colonel *Daniel J. Dell'Orto* (on brief); Captain *Karen R. O'Brien.*

*Opinion of the Court*

WISS, Judge.

Despite Norment's pleas of not guilty, a general court-martial consisting of officer members, convened in Stuttgart, Federal Republic of Germany, convicted him of indecent assault (three specifications) and wrongful solicitation of adultery, in violation of Article 134, Uniform Code of Military Justice, 10 USC § 934. The court members sentenced him to a bad-conduct discharge, confinement for 6 months, total forfeitures, and reduction to the lowest enlisted grade. The convening authority approved the sentence, and the Court of Military Review affirmed without opinion.

This Court granted review to consider appellant's claims that the staff judge advocate erred by conducting his own independent investigation into matters raised by appellant in his post-trial submissions to the convening authority prior to the latter's action and, having conducted that investigation and responded to appellant's claims in an addendum, that the staff judge advocate erred by not serving that addendum on appellant. We conclude that a new staff judge advocate's recommendation and convening authority's action are necessary.

I

The staff judge advocate's post-trial recommendation to the convening authority was served on appellant's German defense counsel on May 23, 1990. *See* RCM 1106(a) and (f), Manual for Courts–Martial, United

States, 1984. On May 28, counsel formally requested an extension of his 10–day period within which to file a response, *see* RCM 1106(f)(5)(Change 3), and then telephonically requested a further extension due to the hospitalization of counsel's English-speaking secretary.

Ultimately, counsel did file a response on appellant's behalf on June 19. In addition to urging specific arguments that principal prosecution witnesses ought not to be believed, defense counsel raised two important matters. First, he asserted:

It appears that some members of the Court were not attentive, at least for a considerable period of time during the trial, and gave all the appearance of having fallen asleep, particularly at the time when the Defense presented their matters to the Court.... This fact should preclude the approval of findings and sentence.

Second, counsel revealed:

The defense learned subsequent to the trial that during a recess in the trial, a member of the Court, presumably Colonel Cimbal [Colonel Cimral, according to the convening order], was seen to drive in the same automobile with not only the judge but also a member of the prosecution, namely the lead trial counsel, Captain Mieth.... At least the appearance of evil, if not evil itself has been manifested by such action. Appearance of evil should, however, be avoided as evil itself.

In support of these allegations, counsel attached signed written statements from three people: Staff Sergeant Joel L. Hardy, who "was the guard for SSG Norment

during his court-martial"; Staff Sergeant Stephanie A. Norment, appellant's wife; and Sergeant Steven L. Myers, apparently a spectator at the trial and a friend of appellant. Hardy wrote:

I was in the front row of chairs while the trial was going on. I saw that while SSG Norment['s] lawyer was talking to the people of the court, two members of the jury was going to sleep. They would sleep for about 30 seconds then look back up. This went on for about one hour.... This trial was rushed very much. I feel that a two-day trial would have been much more better for the jury. Then they could have made a good and fair decision.

Appellant's wife added:

We were at the trial from 0800 hours until 0100 hours the following morning. Certain members on the jury were actually nodding during the closing arguments. During one of the recesses Sgt. Myers came and asked me if the judge and the prosecutor are supposed to be going anywhere together. I told him I didn't think so and I asked him why. He told me to go look out of the window; but I didn't see them. They must had already driven off. SSG Hardy had also seen the same thing as Sgt Myers. Several people in the court room were going to write statements but were warned about having any involvement and what could happen to them if they did. They apologized but said they had to think about their career.[1]

Finally, Myers asserted:

I witnessed several members of the jury falling to sleep. I kept looking around to

1. SSG Stephanie Norment had made similar complaints two months earlier in a letter to Congressman Earl Hutto:

The trial was scheduled to last two days, but was pushed to convene in one day.... The trial went from 08:00 hrs in the morning until 01:00 hrs the following morning, 17 hours straight. Members of the jury were actually falling to sleep during the proceedings. Several people that were present in the court room were wondering what was going on. A man's life and total career was depending on the jury's decision and half of them were

sleeping. If they were so tired why didn't they adjourn until the next day? Something else that disturbed me was the fact that the judge, the prosecutor, and a member of the jury were seen leaving together in the same car? Sir, I am a child of God and right is right; but, there is something that is definitely wrong in this case. When you have people that worked in the legal office, where the trial took place, coming up to you telling you to fight this case because your husband was "Railroaded." It leaves me no other choice

see if anyone else had noticed the same thing. I asked Mrs. Norment how long the trial was suppose[d] to last because two of the jury members could hardly keep their heads from bobbing. During one break, I'm not sure if it was for lunch or the one shortly after lunch, but I saw the judge and the red head guy leaving together in a black car. There was another guy with them who was a member of the jury panel whose name I later found out was Col Cim[r]al. I asked Mrs. Norment if they were suppose[d] to be hanging out together and to go look out the window.

Three days later, on June 22, the staff judge advocate signed an "Addendum to SJA Recommendation" in appellant's case. There, he wrote:

I have examined the allegation of legal error raised by the accused in matters submitted under R.C.M. 1106. I disagree with the accused's assertion that legal error occurred during the trial. *I have inquired into the allegations of court member misconduct and judicial-prosecutor-court member collusion, and have determined that there is no basis in fact to the allegations.* Accordingly, it is my opinion that corrective action on the findings or sentence is not necessary.

(Emphasis added). That same day, the convening authority approved the trial results. There is no indication that the staff judge advocate's addendum was served on the defense.

## II

RCM 1106(f)(7)(Change 4) provides:

The staff judge advocate or legal officer may supplement the recommendation after counsel for the accused has been served with the recommendation and given an opportunity to comment. *When new matter is introduced after counsel for the accused has examined the recommendation, however, counsel for the accused must be served with the new matter and given a further opportunity to comment.*

but to sound off as loudly as I can to let

(Emphasis added). The Drafters' Analysis of this rule explains that it is based on this Court's decision in *United States v. Narine,* 14 MJ 55 (CMA 1982). Manual, *supra* at A21–74 (Change 4). There, Judge Cook explained for the majority:

We wish to make clear that we find no impropriety in the action of the staff judge advocate in supplementing his review in order to accommodate changes in law occasioned by a recent decision. It is simply that where new matter is introduced after defense counsel has examined the review, [*United States v.*] *Goode* [, 1 MJ 3 (CMA 1975),] requires a further opportunity to comment be given to the defense counsel. It dilutes the curative effect of *Goode* to ignore the lack of input from the defense counsel and to examine the new material for possible prejudice at the appellate level neither substitutes for the input of the defense counsel nor avoids the appellate caseload that *Goode* was designed to reduce.

14 MJ at 57 (footnote omitted).

In response to appellant's assertion that RCM 1106(f)(7) was not complied with, the Government before this Court contends, *seriatim:* 1) The addendum contains only the staff judge advocate's "discussion of and disagreement with appellant's claim of legal errors ... and should not be considered 'new matter' within the meaning of RCM 1106(f)(7)"; 2) if it were new matter, the error "should be tested for prejudice"; and 3) "appellant suffered no prejudice," since "[a]ny opportunity to rebut the SJA addendum would have added nothing to that already before the convening authority." Answer to Final Brief at 4, 5, and 6, respectively.

We cannot agree that the addendum contains no new matter when the staff judge advocate expressly noted: "I have inquired into the allegations ... and have determined that there is no basis in fact to the allegations." It would seem clear that the staff judge advocate's resolution of this

somebody hear about it.

matter—at least in his own mind—was based on his own extra-record inquiry. The Discussion of RCM 1106(f)(7) states that, while the phrase " '[n]ew matter' does not ordinarily include any discussion by the staff judge advocate or legal officer of the correctness of the initial defense comments," that phrase *does* include "matter from outside the record of trial." We believe that this Discussion is sound and therefore that error has occurred here.

The Government points out that, in *United States v. Anderson*, 25 MJ 342, 344 (CMA 1987), this Court implied that failure to serve an addendum containing new matter might be nonprejudicial, notwithstanding the majority's clear holding to the contrary in *Narine*. Regardless, the Government's contention that the defense could not have benefited from an opportunity to respond to the addendum here asks us to hide our judicial heads in the sand.

Neither the extent of the staff judge advocate's "inquiry" nor his sources or the content of any information that he uncovered is readily apparent; the defense surely would have forcefully pointed that out. Moreover, at least unless the defense contentions are obviously fanciful, which these apparently were not,[2] the mystery of the addendum's new information afforded the convening authority no basis upon which to decide whether it was necessary under the circumstances to order an Article 39(a)[3] session to resolve the matter, as would seem to be appropriate under *United*

*States v. Witherspoon*, 16 MJ 252 (CMA 1983). *See* RCM 1102(b)(2). We will give the convening authority that opportunity.

### III

The decision of the United States Army Court of Military Review and the action of the convening authority are set aside. The record of trial is returned to the Judge Advocate General of the Army for further action consistent with this opinion.

Chief Judge SULLIVAN and Judges COX and GIERKE concur.

CRAWFORD, Judge (concurring in the result):

Inattentive court members and improper communications between judges, court members, and counsel undermine the military justice system. I agree that these are not to be "whimsically dismissed." 34 MJ at 227 n. 2. When these issues are known or reasonably should have been known by defense counsel at trial, they should be raised immediately so they can be disposed of appropriately either by challenges to the participants, mistrial, or other remedies. The allegations of inattentive court members and *ex parte* communications are easy to make but difficult to examine months or years after the trial. I do not condone gamesmanship on issues like these, which could have been raised at trial and were not, so they should be considered waived on appeal. *Cf. United States v. Frierson*, 24 MJ 647 (1987), and cases cited therein.

---

**2.** Claims of inattentive court members and improper influence of a court member, buttressed by detailed eyewitness accounts, are not issues to be whimsically dismissed. *See United States v. West*, 27 MJ 223 (CMA 1988); *United States v. Witherspoon*, 16 MJ 252 (CMA 1983); Mil.

R.Evid. 606(b), Manual for Courts–Martial, United States, 1984.

**3.** Uniform Code of Military Justice, 10 USC § 839(a).