**UNITED STATES, Appellee,**

v.

**Staff Sergeant Otha L. NORMENT, 411–15–0330, United States Army, Appellant.**

**ACMR 9001079.**

U.S. Army Court of Military Review.

31 March 1993.

For Appellant: Captain Michael Huber, JAGC (argued), Major Robin L. Hall, JAGC (on brief).

For Appellee: Major Kenneth T. Grant, JAGC (argued), Colonel Dayton M. Cramer, JAGC, Major Joseph C. Swetnam, JAGC (on brief).

Before De GIULIO, BAKER, and WALCZAK, Appellate Military Judges.

## OPINION OF THE COURT ON FURTHER REVIEW

De GIULIO, Senior Judge:

Appellant was tried by a general court-martial composed of officer members. Contrary to his pleas, he was found guilty of three specifications of indecent assault and one specification of wrongful solicitation to commit adultery, in violation of Article 134, Uniform Code of Military Justice, 10 U.S.C. § 934 (1982) [hereinafter UCMJ]. He was sentenced to a bad-conduct discharge, confinement for six months, total forfeitures, and reduction to Private E1. The convening authority approved the sentence. This Court affirmed the sentence.

*United States v. Norment*, ACMR 9001079 (A.C.M.R. 30 May 1991) (unpub.). On 11 May 1992, the United States Court of Military Appeals found that new matter in the staff judge advocate's recommendation had not been served upon the appellant and set aside the decision of this Court. *United States v. Norment*, 34 M.J. 224 (C.M.A. 1992). The case was returned to a different convening authority for a new recommendation and action. The new convening authority approved the adjudged sentence. Appellant's case is now before us for further appellate review.

Appellant asserts three related errors: (1) the first staff judge advocate erred by directing his chief of criminal law to conduct a post-trial investigation into matters raised in appellant's post-trial submissions, (2) the second staff judge advocate erred by not recommending a post-trial session under Article 39(a), UCMJ, to investigate matters raised by appellant in his post-trial submissions, and (3) the initial and subsequent convening authorities erred by not ordering a post-trial hearing under Article 39(a), UCMJ, to investigate the matters raised by appellant in his post-trial submissions. We disagree and affirm.

As part of matters submitted under the provisions of Manual for Courts–Martial, United States, 1984, Rules for Courts–Martial 1105–1106 [hereinafter R.C.M.], appellant included a statement from a guard from appellant's unit, Staff Sergeant (SSG) Joel L. Hardy, who stated, in part:

> [W]hile the trial was going on [and appellant's lawyer] was talking to the people of the court, two members of the jury was [sic] going to sleep. They would sleep for about 30 seconds then look back up. This went on for about one hour. I feel that it is the jury's job to make a good decision on a trial, but this jury or two members of the jury I feel missed out on some of the things that SSG Norment's lawyer had to say. The lawyer had put out some very good points about SSG Norment. This trial was rushed very much. I feel that a two day trial would have been much more better [sic]

for the jury. Then they could have made a good and fair decision.

Also attached was a statement by appellant's wife, Stephanie A. Norment, which states, in part:

We were at the trial from 0800 hrs until 0100 hrs the following morning. Certain members on the jury were actually nodding during the closing arguments. During one of the recesses Sgt. Myers came and asked me if the judge and the prosecutor are suppose [sic] to be going anywhere together. I told him I didn't think so and I asked Him [sic] why. He told me to go look out of the window; but I didn't see them. They must had [sic] already driven off. SSG Hardy had also seen the same thing as Sgt Myers. Several people in the court room were going to write statements but were warned about having any involvement and what could happen to them if they did. They apologized but said they had to think about their career.

Steven L. Myers stated, in part:

I witnessed several members of the jury falling to sleep. I kept looking around to see if anyone else had noticed the same thing. I asked Mrs. Norment how long the trial was suppose [sic] to last because two of the jury members could hardly keep their heads from bobbing. During one break, I'm not sure if it was for lunch or the one shortly after lunch, but I saw the judge and the red head guy leaving together in a black car. There was another guy with them who was a member of the jury panel whose name I later found out was Col. Cimbal. I asked Mrs. Norment if they were suppose [sic] to be hanging out together and to go look out the window. When I got home early the next morning from the trial my wife asked me if Stephanie (Mrs. Norment) was okay. She said she had been trying to call us because a friend of ours had stopped by around 3 O'clock (1500 hrs) and said Normy (SSG Norment) would be found guilty and that he would get some time but how much he didn't know. I asked my wife how did he know at 3 O'clock because the closing argu-

ments hadn't even been read. She said that OB (our friend) knew the prosecutor and had spoken to him.

In an addendum to his recommendation, the staff judge advocate stated, in part:

I have examined the allegation of legal error raised by the accused in matters submitted under R.C.M. 1106. I disagree with the accused's assertion that legal error occurred during the trial. I have inquired into the allegations of court member misconduct and judicial-prosecutor-court member collusion, and have determined that there is no basis in fact to the allegations. Accordingly, it is my opinion that corrective action on the findings or sentence is not necessary.

No other information concerning this matter was attached to the addendum.

The staff judge advocate's addendum was not served on the appellant and was the basis for the United States Court of Military Appeals decision. The case was returned to a different convening authority for a new post-trial action. Included in the matters attached to the second staff judge advocate's recommendation, which was served upon appellant, was the first staff judge advocate's recommendation. Also attached was an affidavit by the chief of military justice who had conducted the initial inquiry. In his affidavit, he states that he contacted the three individuals named in the appellant's post-trial submissions "[i]n order to determine if there was sufficient merit to either of the allegations that would justify a recommendation to the convening authority to order a post-trial Article 39A [sic] session...." The trial counsel stated that he did not own an automobile, rode his bicycle to work, and had never, on any occasion, been in an automobile with either the military judge or Colonel Cimral, the court. member named. He further stated that he did not notice any inattentive court members during the court-martial and that the issue was never raised at trial.

Colonel Cimral, the court member, stated that he did not own an automobile of the color described in the allegations. He believes that he did not have his

automobile at the place of trial and that he had never, on any occasion, been in an automobile with either the military judge or the trial counsel.

The military judge stated that he usually walked to the trial center, usually did not leave the trial center during the duty day, not even for lunch, and that he did not own an automobile as described in the allegations. He further stated that he had never, on any occasion, been in an automobile with either Colonel Cimral or the trial counsel. At trial, the issue of inattentive court members was not raised. The military judge was certain that he did not notice any inattentive members.

Appellant submitted a response to the new staff judge advocate's recommendation. In a memorandum included in the matters submitted, appellant's counsel criticizes the inquiry, states that the chief of criminal law was involved in the case and should not have conducted the investigation, and requests a Article 39(a) session to resolve the matter.[1] No further information to support these allegations was submitted by appellant. Finally, based upon the staff judge advocate's recommendation and all the matters submitted by appellant, the convening authority again approved the sentence. He did not order the defense-requested Article 39(a) session.

■ After a record of trial has been authenticated, but before initial action, the convening authority or an appellate court can order a post-trial session under the provisions of Article 39(a), UCMJ. *United States v. Brickey,* 16 M.J. 258, 264–265 (C.M.A.1983); *United States v. Toy,* 32 M.J. 753, 756 (A.C.M.R.1991). A post-trial Article 39(a) session is an appropriate method to examine allegations of misconduct by court members or by counsel.

*United States v. Norment,* 34 M.J. 224, 227 (C.M.A.1992); *United States v. West,* 27 M.J. 223 (C.M.A.1988); *United States v. Witherspoon,* 16 M.J. 252 (C.M.A.1983). A post-trial Article 39(a) session is not the only method to resolve allegations of court-member misconduct. "In some cases post-trial claims of misconduct by court-members can be satisfactorily resolved on the basis of affidavits." *Witherspoon,* 16 M.J. at 255 (Everett, Chief Judge, concurring in result). *See also United States v. Hamilton,* 36 M.J. 723, 728 (A.C.M.R.1992); *United States v. Redman,* 33 M.J. 679, 682 (A.C.M.R.1991).

The United States Court of Military Appeals has held that, where it is concluded that a court member was sleeping or inattentive, reversal is required in order to preserve a fair trial and due process of law. *United States v. Brown,* 3 M.J. 368 (C.M.A.1977); *United States v. Groce,* 3 M.J. 369 (C.M.A.1977). This appears to be based upon plain error without regard to a showing of prejudice and is not waived by the failure of counsel to object in some fashion. *United States v. West,* 27 M.J. 223 (C.M.A.1988). This *per se* approach to reversal without testing for prejudice has been questioned. *Id.* at 224. Perhaps the issue of waiver should be re-examined. *See Norment,* 34 M.J. at 227 (Crawford, Judge, concurring in result). Since the decision in *Groce,* waiver has been applied. *See United States v. Frierson,* 24 M.J. 647 (A.C.M.R.), *pet. denied,* 25 M.J. 241 (C.M.A.1987), and cases cited therein. Although we would apply waiver in this case, we do not believe it is necessary to do so. Whether court members are inattentive or asleep are questions of fact. *West,* 27 M.J. at 224.

■ We will determine this issue based upon the facts before us. We have exam-

---

1. Another affidavit submitted by the chief of military justice states that he was not involved in the actual prosecution of the case and was not in the rating chain of trial counsel. He stated, "Other than monitoring the processing time of this court-martial, I did not participate in the pretrial investigation, trial preparation or actual prosecution of the case. I probably assisted the Staff Judge Advocate in the prepara-

tion of the Pretrial Advice and did assist him in the preparation of the Post–Trial Recommendation." We find no error in this officer conducting an inquiry in this case to determine if further proceedings were necessary. Even assuming error, under the circumstances of this case, we find no prejudice to appellant. *Cf. United States v. Payne,* 3 M.J. 354 (C.M.A.1977).

ined the statements and affidavits before us and the record of trial. Using our fact finding powers under the provisions of Article 66(c), UCMJ, 10 U.S.C. § 866(c), we find that the affidavits of the chief of military justice most credible. We find the facts against appellant concerning the allegation that the trial counsel, military judge, and court member rode away in an automobile together during a break of appellant's trial. From the statements themselves, we find that Mrs. Norment is the wife of appellant and biased in his favor. We also find that Sergeant Myers is a personal friend of appellant and is biased in his favor. Having found portions of Mrs. Norment's and Sergeant Myers' statements not credible, we give little weight to the remainder of their statements.

■ In determining if court members were asleep or inattentive, we find that neither the trial counsel, the military judge, nor the two defense counsel noted it for the record. We further find that the failure of the civilian defense counsel, military defense counsel, or appellant to bring a sleeping or inattentive court member to the attention of the military judge is significant. *See West*, 27 M.J. at 224 n. 1. Although this may not be considered waiver, we view it as strong evidence that no member was inattentive or asleep during the trial. *Cf. United States v. Palmiter*, 20 M.J. 90, 97 (C.M.A.1985) (failure to raise issue of illegal confinement while undergoing pretrial confinement will be strong evidence that confinee was not illegally confined).

Considering these facts we find no court member was inattentive or sleeping. We further find no misconduct on the part of the court members, military judge, or the trial counsel as alleged.

■ We also find no error on the part of the chief of criminal law in conducting an inquiry into the allegations made by appellant's counsel in order to determine if an Article 39(a) session should be directed by the convening authority. Although, in retrospect, a better way might have been to order a post-trial Article 39(a) session, we find no prejudicial error in his determination. Now that the basis for his determination has been disclosed, there is no longer a "mystery of the addendum's new information" and there is a basis for the convening authority's decision. The error in this case was the failure to attach the basis for the decision to the staff judge advocate's recommendation and the failure provide it to appellant for comment. *See Norment*, 34 M.J. at 227. Those errors have now been corrected.

The remaining assertions of error to include those personally raised by appellant pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A.1982), are without merit.

The findings of guilty and the sentence are affirmed.

Judge BAKER and Judge WALCZAK concur.